UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Patrick T. Shaughnessy,                              Case No. 10-75021
                                                     Chapter 7
                    Debtor.                          Hon. Marci B. McIvor
_____/

Debbie Tomaszewski,

                    Plaintiff,

v.                                                   Adv. Pro. No. 11-4109

Patrick T. Shaughnessy

                    Defendant
_____/

## OPINION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on defendant/debtor Patrick Shaughnessy's Motion to

Dismiss or for Summary Judgment. Defendant seeks dismissal of plaintiff Debbie

Tomaszewski's Adversary Complaint, which was filed *pro se*. In addition to filing the original

Complaint, Plaintiff filed an Amended Complaint. The Amended Complaint does not include all

of the allegations included in the Original Complaint. Because Plaintiff is not represented by

Counsel, the Court will construe the Complaints together as one Complaint and address all the

allegations raised in both Complaints.

In her first Complaint, Plaintiff seeks to have four state court judgments against

Defendant , totaling $11,805.50,  held nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A),

(a)(4), and (a)(6). Plaintiff's Complaint also makes vague allegations of preferential and

fraudulent transfers under 11 U.S.C. §§ 547 and 548. Plaintiff's Amended Complaint alleges

that Defendant has committed bankruptcy fraud by filing inaccurate bankruptcy schedules.

Without citation to a specific provision of the Bankruptcy Code, Plaintiff essentially seeks to have Defendant's discharge denied pursuant to 11 U.S.C. § 727(a)(4)(A).

For the reasons stated in this Opinion, Defendant's Motion for Summary Judgment is granted as to the claims arising under §§ 523(a)(2)(A), (a)(4) and (a)(6) as well as the claims arising under §§ 547 and 548. As to Plaintiff's claims arising under 11 U.S.C. § 727(a)(4)(A), Defendant shall file a supplemental brief on or before September 16, 2011.

## I. <u>Facts</u>

Plaintiff Debbie Tomaszewski and defendant/debtor Patrick Shaughnessy began "dating" in the spring of 2006. On a number of occasions, Plaintiff loaned Defendant money for personal purposes (e.g. purchase of a motorcycle) or for business purposes (e.g. a snow plow). Defendant did not repay all of the loans. The relationship ended and in September, 2009, Plaintiff filed five actions in Ohio state court seeking repayment of the money. The cases were consolidated and heard by the Municipal Court of Sylvania, Lucas County, Ohio, on August 13, 2010. (Cases CVF 0910246, CVF 091247, CVF 0910248, CVF 091249, 0901078). On August 24, 2010, the Ohio state court entered findings of fact and conclusions of law in each case. Judgment was entered for Defendant in one case, and for Plaintiff in the other four cases. In its findings of fact and conclusions of law, the state court expressly found that there were oral agreements by which Defendant agreed to repay Plaintiff money she had loaned him. The court further found that those agreements were breached by Defendant. Defendant was ordered to pay Plaintiff $11,805.50. (Plaintiff's Complaint, Ex. 1, Judgment Entry).

Defendant filed a voluntary no-asset chapter 7 bankruptcy petition on November 18, 2010. Included on schedule F is a debt owed to Plaintiff in an "unknown" amount. The

2

schedules do not disclose monthly social security disability income of $829 or several vehicles which were titled in Debtor's name on the date his bankruptcy petition was filed. A vehicle title search at the Ohio Bureau of Motor Vehicles dated August 2, 2011 (which was provided by Plaintiff) discloses the following information relevant to the present Motion:

| Title Number | Issue Date | Vehicle | Mileage at date title issued |
|---|---|---|---|
| 4803649864 | 4/20/2010 | 2010 Harley Davidson | 21 |
| 3900547293 | 7/26/2010 | 1992 Int'l Harvester Semi Tractor | 57,339 |
|  |  |  |  |
| 4803443620 | 2/13/2009 | 1999 Ford F15 | 128,634 |
| 4803209102 | 11/20/2007 | 2000 Oldsmobile Alero | 158,544 |
| 4802744614 | 8/22/2005 | 1997 Dodge | 195,503 |
| 4802374835 | 1/2/2004 | 1997 Ford Taurus | 127,185 |
| 4801484201 | 3/1/2000 | 1991 Pontiac GPS | 119,890 |
| 4801479540 | 2/23/2000 | 1990 Lincoln | 153,489 |
| 4801335889 | 6/28/1999 | 1988 Ford van | 151,000 |
| 4801159278 | 8/10/1998 | 1981 Kawasaki JKA | 9,908 |

The first two vehicles listed above were included on Debtor's schedule B. The remaining vehicles were not listed on schedule B. The records of the Ohio Bureau of Motor Vehicles do not provide any information regarding vehicle registration (i.e. license plates and tags).

On January 13, 2011, Plaintiff filed the present adversary complaint seeking to have the

state law judgment(s) held nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4) and (a)(6). Plaintiff contends that Defendant defrauded her by lying about repayment of the loans. Plaintiff's complaint includes a citation to 11 U.S.C. §§ 548 and 548, with a bare allegation that Defendant made preferential and fraudulent transfers of assets. In the Amended Complaint, she also asserts that Defendant's bankruptcy schedules are not accurate because they omit material assets and income. The Court construes the allegations relating to inaccurate bankruptcy schedules as a request to deny discharge pursuant to 11 U.S.C. § 727(a)(4)(A).

On June 2, 2011, Defendant filed the present Motion to Dismiss or for Summary Judgment. On June 17, 2011, Plaintiff filed a Response to Defendant's Motion for Summary Judgment. In her prayer for relief, Plaintiff requested that the Court dismiss Defendant's bankruptcy and award Plaintiff a nondischargeable judgment in the amount awarded by the state court. The Court construes Plaintiff's Response as a cross-motion for summary judgment.

On July 17, 2011, the Court held a hearing on the cross-Motions for Summary Judgment. At the conclusion of the hearing, the Court requested additional briefs on Plaintiff's arguments relating to denial of discharge under 11 U.S.C. § 727. On July 26, 2011, Plaintiff filed an Amended Response in Opposition to Defendant's Motion for Summary Judgment.

## II. Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11. *See* 28 U.S.C. §§ 1334 and 157. Core proceedings include proceedings to determine dischargeability. 28 U.S.C. § 157(b)(2)(I), preferences, 28 U.S.C. § 157(b)(2)(F) and fraudulent transfers, 28 U.S.C. § 157(b)(2)(H).

## III. Standard for Summary Judgment

4

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. A "genuine" issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). Once the movant meets this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. If the record taken in its entirety could not convince a rational trier of fact to return a verdict in favor of the non-moving party, the motion should be granted." *Cox v. Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995) (internal quotation marks and citation omitted).

## IV. Analysis

### A. Plaintiff's Claims under 11 U.S.C. § 523

Because Plaintiff is *pro se*, the statutory basis for her nondischargeability claims and the facts that support those claims are not easily discerned. However, it appears that Plaintiff's

original Complaint is seeking a determination of nondischargeability under 11 U.S.C. § 523.

With regards to Plaintiff's claims under that section, it is undisputed that the factual allegations

made by Plaintiff against Defendant in the present case are identical to the factual allegations

made by Plaintiff against Defendant in her state court cases against Defendant. The only

distinction between the state court cases and the present Adversary Proceeding is that Plaintiff

now argues that there are facts which demonstrate some sort of fraudulent conduct which

precludes Defendant from discharging the money judgment Plaintiff received against him in

state court. Because there has been a state court trial including the same parties and the same

claims, the Court must first determine whether the doctrine of collateral estoppel bars re-

litigation of Plaintiff's claims against Defendant.

### 1. The Doctrine of Collateral Estoppel Precludes Plaintiff from Relitigating her Claims Against Defendant in Bankruptcy Court

The doctrine of collateral estoppel is applicable to bankruptcy proceedings and can be

used in nondischargeability actions to prevent the relitigation of issues previously decided in

another forum. *Grogan v. Garner*, 498 U.S. 279 (1991); *Rally Hills Productions, Inc. v. Bursack*

*(In re Bursack)*, 65 F.3d 51 (6th Cir. 1995). Even though Congress intended bankruptcy courts to

determine the issue of whether a debt is dischargeable, Congress does not require bankruptcy

courts to redetermine all the underlying facts. *Spilman v. Harley*, 656 F.2d 224, 227 (6th Cir.

1981). "Where a state court determines factual questions using the same standards as the

bankruptcy court would use, collateral estoppel should be applied to promote judicial economy

by encouraging the parties to present their strongest arguments." *Klingman v. Levinson,* 831

F.2d 1292, 1295 (7th Cir. 1987). The doctrine of collateral estoppel prevents an issue from being

relitigated where the issue was actually litigated and necessarily decided, that is the issue was

6

essential to the final judgment in the prior proceeding.  *Smith v. Sushka,* 117 F.3d 965, 969 (6th

Cir. 1997).  Pursuant to the full faith and credit principles of 28 U.S.C. § 1738, bankruptcy

courts must give the same preclusive effect to the previously decided issue as it would be

accorded under that state's law. *Id.*

In the present case, the judgments at issue were entered by a state court in Ohio. Under

Ohio law, the party moving for the application of the doctrine of collateral estoppel must show

the existence of the following four elements:

> (1) A final judgment on the merits in the previous case after a full and fair opportunity to
> litigate the issue;
> (2) The issue must have been actually and directly litigated in the prior suit and must
> have been necessary to the final judgment;
> (3) The issue in the present suit must have been identical to the issue involved in the prior
> suit; and
> (4) The party against whom estoppel is sought was a party or in privity with a party to the
> prior action.

*Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415–16 (Bankr.N.D.Ohio 1998), *citing*

*Cashelmara Villas Ltd. Partnership v. DiBenedetto*, 87 Ohio App.3d 809, 813–14, 623 N.E.2d

213 (1993).

The first and fourth  elements of collateral estoppel are met in this case.  On August 13,

2010, Judge William Kroncke, in the Municipal Court of Sylvania, Lucas County, Ohio, held a

trial on Plaintiff's state court complaints against Defendant. (Cases CVF 0910246, CVF 091247,

CVF 0910248, CVF 091249, 0901078).  The cases were consolidated for trial.  The state court

took testimony from both Plaintiff and Defendant and multiple exhibits were introduced into

evidence.  On August 24, 2010, the state court issued an opinion and awarded a money judgment

to Plaintiff.  That judgment has not been appealed.  Therefore, there has been a final judgment on

7

the merits on the prior case after a full and fair opportunity to litigate the issue.  The parties in the state court action are identical to the parties in the present adversary proceeding.

The second and third elements of collateral estoppel are that the issues in the present action must be identical to those in the prior action, and those issues must have been actually litigated and necessary to the judgment in the prior action. To determine whether collateral estoppel applies, this Court must compare the issues litigated in the state court case with the issues Plaintiff seeks to litigate in this case.  In the state court cases, Plaintiff alleged that she had loaned Defendant money for multiple purposes and that he had failed to repay her.  The state court, after listening to testimony of Plaintiff and Defendant and reviewing multiple exhibits (the same exhibits presented to this Court), concluded that Defendant failed to repay money he owed to Plaintiff.  The state court issued a detailed opinion and entered a money judgment in the amount of $11, 805.50 in favor of Plaintiff against Defendant.  It is difficult to summarize the issues litigated before the state court without quoting the entire state court opinion, therefore, in the interest of brevity,  this Court is attaching the state court's opinion to this Opinion.

In the instant case, Plaintiff's claims and allegations are substantively identical to those alleged in her state court complaint.  In fact, her Adversary Complaint references her state court complaints and the exhibits introduced into evidence at trial.  However, she now argues that Defendant's conduct was fraudulent and that he engaged in fraudulent transfers, thus the state court cases should be "re-opened" to address the fraud issues.    Before this Court is able to determine whether Plaintiff should be allowed to relitigate her claims, this Court must determine whether there is a fraud issue in this case which was not pled or litigated in the state court cases. While Plaintiff does not cite a specific statute, the Court can only conclude that she is attempting

to state a claim under 11 U.S.C. § 523(a)(2)(A).

The purpose of section 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud. *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc).*, 16 F.3d 1443, 1451 (6th Cir. 1994). To prevail on a claim under § 523(a)(2)(A), a plaintiff must show that:

> (1) [T]he debtor obtained money through a material misrepresentation that at the time the debtor knew was false or that he made with reckless disregard for the truth; (2) the debtor intended to deceive; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

*Rembert v. AT&T Universal Card Services, Inc. (In re Rembert)*, 141 F.3d 277, 280 (6th Cir. 1998). *See also Digital Commerce Ltd. v. Sullivan (In re Sullivan)*, 305 B.R. 809, 823 (W.D. Mich. 2004).

The Court finds that Plaintiff has not presented any facts which support a claim of fraud under § 523(a)(2)(A). In her Adversary Complaint, Plaintiff characterizes all of the money she gave to Defendant as "loans". Plaintiff's issue with Defendant is that he failed to repay the loans notwithstanding his promises to pay. Plaintiff was not induced to loan Defendant money as a result of fraudulent misrepresentations. To the extent that Defendant made misrepresentations to Plaintiff, those misrepresentations were made *after* Plaintiff loaned the money to Defendant. Although Plaintiff now characterizes Defendant's failure to repay her as "fraudulent", the issue Plaintiff seeks to litigate is identical to the issue she litigated in state court i.e. did Defendant owe Plaintiff money and how much did he owe?

Viewing all of Plaintiff's allegations in the light most favorable to Plaintiff, the Court concludes that the issues raised by Plaintiff under 11 U.S.C. § 523(a)(2)(A) are identical to those she raised and litigated in her state court cases. The Court fails to find any "fraudulent" conduct

9

that would create a new issue which would have be litigated in this Court. This case is distinguishable from a case where a default judgment is entered in a prior proceeding and there is no record available to determine what issues were actually litigated. In this case, the Plaintiff's state court complaint went to trial and has a fully developed record. Were this Court to try the Adversary Complaint, the exact same evidence would be introduced and this Court would reach the same conclusion reached by the state court: Defendant breached an oral agreement to repay Plaintiff. Because the issues raised in Plaintiff's Adversary Complaint under 11 U.S.C. § 523(a)(2)(A) were fully litigated and necessary to the state court judgment, the second and third elements of collateral estoppel are satisfied.

Because all four elements of collateral estoppel have been satisfied, this Court concludes that it is bound by the state court judgment with regards to all allegations made under 11 U.S.C. § 523(a)(2)(A). Defendant is entitled to summary judgment on all claims made under 11 U.S.C. § 523(a)(2)(A).

**2. Plaintiff fails to state a claim under 11 U.S.C. § 523(a)(4) or § 523(a)(6).**

Plaintiff's original Complaint also sought relief under 11 U.S.C. § 523(a)(4) and (a)(6). Section 523(a)(4) excepts from discharge debts arising from "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny." Section 523(a)(6) excepts from discharge a debt arising from a willful and malicious injury by the debtor. A review of Plaintiff's Complaint and Amended Complaint disclose no allegations sufficient to give rise to a claim under either of those sections of the Bankruptcy Code, thus, Plaintiff is not entitled to a nondischargeable judgment under those provisions. Defendant's Motion for Summary Judgment is granted as to claims arising under those code sections. .

10

**B.  Fraudulent Transfers under 11 U.S.C. § 548**

In the original Adversary Complaint filed in this Court, Plaintiff also alleges that Defendant made multiple fraudulent transfers, and that the nature of those fraudulent transfers requires relitigation of the state court cases.

The Bankruptcy Code's fraudulent conveyance provision is found at 11 U.S.C. § 548.  It provides in relevant part:

> (a)(1) The trustee may avoid any transfer. . . of an interest of the debtor in property. . . that was made. . . on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>
>> (B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

11 U.S.C. § 548.  Section 548(a)(1)(A) contemplates a showing of actual intent to defraud while section 548(a)(1)(B) contemplates constructive (or implied) fraud.  The trustee bears the burden of proving the elements of a fraudulent conveyance by a preponderance of the evidence. *Lisle v. John Wiley & Sons, Inc. ( In re Wilkinson*), 319 B.R. 134 (Bankr.E.D.Ky.2004).

By the express terms of § 548, actions to recover fraudulent transfers belong to the trustee, not to individual creditors.  "Section 548's avoiding power exists for the benefit of a debtor's estate. It serves to increase creditor dividends by increasing the estate's assets and by avoiding unfairly incurred obligations. Given this goal, the Code restricts who can maintain an action under section 548, sometimes referred to as whether there is standing to prosecute the action."  5 *Collier on Bankruptcy*, ¶ 548.02 at 438-34 (Alan N. Resnick, *et. al.*, eds. 16th ed.).  Plaintiff, as an individual creditor, has no standing to pursue a fraudulent transfer claim under 11

U.S.C. § 548.  Defendant is entitled to summary judgment as to any claims alleged under 11

U.S.C. § 548.

## C.  **Denial of Discharge pursuant to 11 U.S.C. § 727**

Section 727 of the Bankruptcy Code provides that a debtor is entitled to a discharge

unless one or more of twelve exceptions is met. Although exceptions to discharge are strictly

construed (*See Rembert v. AT&T Universal Card Services, Inc.* (*In re Rembert*),141 F.3d 277,

281 (6th Cir. 1998)), "a discharge in bankruptcy is a privilege, not a right, and should only inure

to the benefit of the honest debtor." *Wazeter v. Michigan National Bank (In re Wazeter)*, 209

B.R. 222, 227 (W.D. Mich. 1997).   Fed. R. Bankr. P. 4005 places the burden of proof on the

party objecting to discharge.  The standard of proof for allegations under § 727(a) is by a

preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 289 (1991); *Keeney v. Smith*

*(In re Keeney)*, 227 F.3d 679, 683 (6th Cir. 2000).

> The purpose and intent of § 727 is to make the privilege of discharge dependent
> upon a true presentation of financial affairs. It was never intended that a bankrupt,
> after failure, should be excused from his indebtedness without showing an honest
> effort to disclose his entire business, not just a fraction thereof. *Office of the*
> *Comptroller General of the Republic of Bolivia v. Tractman*, 107 B.R. 24
> (S.D.N.Y.1989).
>
> Full disclosure provides the trustee and the bankruptcy court complete and
> accurate information concerning the status of a debtor's affairs. It allows
> comparison between the information disclosed with that provided on the
> bankruptcy petition. It also ensures that the trustee and creditors are supplied with
> dependable data on which they can rely in tracing debtor's financial history.

*Olson v. Slocombe (In re Slocombe)*, 344 B.R. 529, 534 (Bankr. W.D. Mich. 529);  *In re Rice*,

2011 WL 3290312, *2 (Bankr. E.D. Mich).

In the present case, Plaintiff  does not cite 11 U.S.C. § 727 as a basis for denying Debtor

a discharge, but her Amended Complaint alleges that Defendant/Debtor's schedules contains

many inaccuracies and omissions. Specifically, Plaintiff alleges that Defendant failed to include

$829 in monthly social security disability income on Schedule I. Plaintiff also alleges that

Defendant failed to disclose several vehicles which he owned on the date the petition was filed

The Court construes Plaintiff's pleadings as a request for denial of discharge pursuant to 11

U.S.C.

§ 727(a)(4)(A).

> 11 U.S.C. § 727(a)(4)(A) states:

> (a) The court shall grant the debtor a discharge, unless–

> > . . .

> > (4) the debtor knowingly and fraudulently, in or in connection with the case--

> > > (A) made a false oath or account;

> > > (B) presented or used a false claim;

> > > (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

> > > (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs;

The Sixth Circuit Bankruptcy Appellate Panel, in an unpublished case, *Pinnacle*

*Technology Resources, Inc. v. Spencer (In re Spencer),* 359 B.R. 357(table), 2006 WL 3539295

(6th Cir. BAP 2006), succinctly set forth the standard for denial of discharge under

§ 727(a)(4)(A):

> The party seeking denial of the debtor's discharge has the burden of proof, by a preponderance of the evidence, of showing: (1) the statement was made under oath (statements made in a bankruptcy case are made under oath); (2) the statement was false;

13

> (3) the statement related materially to the bankruptcy (a fact is material if it leads to discovery of or relates to the existence or disposal of property of the debtor); (4) the debtor knew the statement was false (knowledge is defined as the debtor knowing the truth and not stating it; however, reckless indifference to the truth, not mistake or inadvertence, also can be knowledge); and (5) the debtor made the statement with fraudulent intent (intent may be inferred from circumstantial evidence or from the debtor's course of conduct).

*In re Spencer*, 359 B.R. at *4 (citations omitted).

As noted above, Plaintiff failed to allege 11 U.S.C. §727 as the statutory basis for a denial of Defendant's discharge. Plaintiff's pleadings are replete with factual allegations and accusations, but it is difficult to sift out the facts potentially relevant to a cause of action under § 727(a)(4)(A). While Plaintiff filed many exhibits, the exhibits are not connected to any specific factual allegation. However, because Plaintiff is pro se, the Court carefully reviewed every exhibit provided by Plaintiff and concludes that there may be a question of fact as to whether Plaintiff's discharge should be denied under § 727(a)(4).

Given the difficulty of deciphering Plaintiff's pleadings and exhibits, the Court finds that it is appropriate for Defendant to have an opportunity to file a brief and affidavit as to whether there are grounds for denying his discharge under § 727(a)(4). Specifically, the Court is interested in the following issues: (1) what is the status of the vehicles still titled in Defendant's name, and (2) a more complete explanation as to why Plaintiff did not disclose his social security income on Schedule I.

Defendant shall file a supplemental brief and affidavit on or before September 9, 2011. Plaintiff may file a response to the supplemental brief on or before September 16, 2011.

The trial is adjourned without date pending the Court's review of the supplemental pleadings filed by the parties.

14

Signed on August 25, 2011

                              /s/ Marci B. McIvor
                        Marci B. McIvor
                        United States Bankruptcy Judge

# IN THE MUNICIPAL COURT OF SYLVANIA, LUCAS COUNTY, OHIO

| | |
|---|---|
| Debbie Tomaszewski | ) Case No.: CVF 0910246 |
| | ) CVF 0910247 |
| | ) CVF 0910248 |
| Plaintiff, | ) CVF 0910249 |
| | ) CVF 0901078 |
| | ) |
| | ) Judge William G. Kroncke |
| | ) |
| -vs- | ) **JUDGEMENT ENTRY** |
| | ) |
| Patrick Shaughnessy | ) |
| | ) |
| Defendant | ) |

The captioned cases were consolidated and called for hearing on August 13, 2010 with plaintiff and counsel present and defendant and counsel present. Evidence submitted and testimony heard in all cases. The court will address and render its decision each case in the order set forth above.

## CVF 0910246

Case filed September 1, 2009 with plaintiff alleging that defendant defaulted in payments due to plaintiff for trips to Florida, Indiana, and Michigan for which plaintiff alleges defendant was to contribute. Plaintiff claims $1,958.33 expenses due from defendant for the trips. Plaintiff also claims that charges were made on plaintiff's credit card totaling $486.70 which are the responsibility of defendant. Lastly plaintiff seeks $426.73 for money borrowed by defendant from plaintiff to pay for car insurance.

Plaintiff testified stating that she and defendant had been friends for 4 or 5 years and together they planned a trip to Florida with each to pay their own share of expenses. Plaintiff stated that a trip to Michigan and Indiana was also involved in which defendant was to pay certain of the expenses. As the court understands plaintiff's testimony these expenses consisted of a cruise ship expense, bar bills and tips, a Christmas present consisting of a second cruise, airline tickets to Florida, an Alamo car rental, and hotel expenses. Plaintiff outlined a summary of these expenses on plaintiff's exhibit A1. Plaintiff further testified stating that there was an Indiana and Michigan trip for which defendant owes her $106.40. Finally, in connection with this case plaintiff contends that she loaned defendant $300 for motorcycle insurance plus another $126 for other vehicle insurance. Plaintiff stated that when she was not receiving reimbursement for expenses she drew up an agreement which defendant signed on October 1, 2006 acknowledging the itemized obligations.

Upon cross examination plaintiff acknowledged that she and defendant were more than platonic friends as they became intimate at some point during their relationship. Plaintiff denied that she wrote his name on the above mentioned agreement or any other document. Plaintiff states that she

1

and defendant broke up December 25, 2007.

Offered into evidence were plaintiffs exhibits A through F consisting of an alleged signed agreement, itemization of expenses, copies of credit card statements, receipts, and another agreement allegedly signed by defendant.

To all of this defendant responds testifying that he and plaintiff had a boyfriend/girlfriend relationship, he didn't sign any documents prepared by plaintiff and he denies that the signature thereon is his. Defendant further testified stating that he did not agree to reimburse plaintiff for any expenses in connection with the trips as during the trips he contributed cash monies for dining and drinking expenses and other fun things. Defendant states that he and plaintiff lived together at plaintiff's residence at a period of time and it was only after they broke up that there was any discussion of payback of expenses.

Upon cross examination he stated that he paid for stuff on the boat, food, bar bills, he won $1,200 at the casino and gave plaintiff $400. He denied having a recollection of borrowing money for motorcycle insurance or truck insurance.

Having reviewed the testimony of the parties and the evidence submitted in the above case the court has come to the following findings of fact and conclusions of law:

- The "agreements" referenced in plaintiff's exhibits A and F take the form of a narrative drafted by plaintiff and there is a paucity of language setting forth any consideration or agreement to pay.

- Aside from the question of the legality of the "agreements" there are no witnesses to the alleged signature of defendant thereon and in fact defendant denies signing same. Plaintiff says defendant signed the two "agreements" and defendant denies same.

- Aside from the issue of any legal impact of the agreements, and lacking any witness or witnesses to defendant's alleged signatures, it is the opinion of the court that plaintiff has failed to approve by a preponderance of evidence that the signatures thereon are those of defendant.

- Lacking any up front agreement that defendant was to reimburse plaintiff for trip and other expenses related to this case, it is the opinion of the court plaintiff has failed to prove by a preponderance of evidence an oral contract for trip expenses or other expenses to be shared by the parties.

- In reviewing plaintiff's exhibits the court fails to find any document(s) specifically referring to payment of car insurance by plaintiff for defendant.

By reason of all of the above plaintiff's cause of action in the within case is found not to be well taken and judgment is granted to defendant, costs paid.

2

**CVF 0910247**

In this cause of action plaintiff filed her complaint stating that defendant owes plaintiff $1,629.50 as the result of a truck sale, $826.73 for truck repairs and fees of $463.40.

According to plaintiff she and defendant had a business relationship whereby they went into the snowplow business with plaintiff purchasing a truck and plow, placing the equipment in the name of defendant. The truck cost $2,775.50, and the plow cost $2,279. Offered into evidence were plaintiff's exhibit G which was a truck invoice and plaintiff's exhibit H which was a check for the plow payable to plaintiff and signed by plaintiff. Plaintiff testified stating that defendant contributed $500 cash for the plow purchase and the truck was eventually sold for $3,500 after she took legal action to gain ownership of the truck.. She further claims that after obtaining ownership repairs in the amount of $789.65 were made to the truck. Included in the list of repairs was a fee to plaintiff for a commission for selling the truck. In addition to the truck issue plaintiff testified stating that she paid expenses for a 1996 and 1999 Lincoln owned by defendant for a total of $463.40.

Upon cross examination plaintiff denied that she received money which was to be applied to the truck as the result of a sale of a Ford Taurus. She states that after she took legal action to obtain title to the truck she retrieved it from defendant.

Offered into evidence were plaintiff's exhibits G, H, I, J, K, L, L1 and M, consisting of the truck invoice, a check made payable to plaintiff issued by herself for $2,800, a snowplow invoice, copies of credit card charges of plaintiff, an itemization of alleged damages and repairs to the truck, receipts having something to do with a 1996 Lincoln, and a receipt from RiteAid for photographs.

To all of this defendant testified stating that he and plaintiff went into the snow plowing business together and he paid plaintiff monies received for plowing. He also claims he gave plaintiff $1,200 in cash for his portion of the truck and plow however he has no receipt or other evidence documenting this.

Having reviewed the testimony of the parties and the evidence submitted in this case, the court has come to the following findings of fact and conclusions of law:

- Although the parties did not have a contract in writing referencing the purchase of the truck and plow, the court is satisfied that there was an oral agreement by reason of plaintiff's testimony and defendant's admission that he paid $500 toward the purchase of the truck. He also testified he paid another $1,200 cash but he has no proof of same. It is therefore the opinion of the court that their was in fact an oral agreement between the parties referencing the snow plow truck. This agreement consisted of purchasing a truck and snow plow which, for reasons remaining unclear to the court, were placed in the name of defendant.

- Plaintiff fronted the costs with the exception of $500 paid by defendant. The truck was eventually sold with plaintiff received proceeds of $3,500.

- Defendant has failed to establish by any credible evidence that he paid $1,200 to plaintiff.

3

• In the opinion of the court plaintiff has failed to establish by a preponderance of evidence that the repairs to the truck and commission were reasonable and necessary in order to sell the vehicle and its plow.

The court calculates that defendant owes plaintiff $1,054 for his portion of the purchase of the truck computed as follows:

$5,054.00- cost of truck paid by plaintiff
$3,500.00- less proceeds of sale received by plaintiff
$1,554.00- balance after sale
$500.00- paid by defendant to plaintiff
$1,054.00- balance owed by defendant to plaintiff

By reason of all of the above the court grants judgement in the within case to plaintiff against defendant in the sum of $1,054, plus costs, and statutory interest after date of judgement.

## CVF 0910248

This action is brought by plaintiff against defendant contending that she purchased a 1999 Lincoln automobile for $2,000 which was placed in the name of defendant. According to plaintiff she was to be paid back the purchase price when the vehicle was sold and the profit was to be split 50/50. Plaintiff states that the car was sold by defendant for $2,940. Plaintiff also brings this action stating that she purchased a mattress for plaintiff and defendant at a costs of $1,064. Plaintiff states that she wants to keep the mattress. By stipulation at this point of the testimony the defendant stipulated that plaintiff may keep said mattress. Offered into evidence were plaintiff's exhibits N, O, P, consisting of a full page of random notes prepared by plaintiff allegedly and with the signature of defendant thereon, a copy of a check made by plaintiff payable to cash for $2,000, which check referenced a Lincoln automobile.

Additionally when the within complaint was filed plaintiff filed with her pleadings a receipt from Dick's Auto Sales dated July 17, 2007 showing the purchase of the Lincoln in question for $2,940 from defendant.

To all of this defendant responds stating that when the vehicle was sold he paid plaintiff $1,800, cash.

Upon cross examination defendant states he has no receipt or other proof of this payment.

Having reviewed the testimony of the parties and the evidence submitted the court has come to the following findings of fact and conclusions of law:

• Based upon the testimony of plaintiff and defendant's admission/claim that he paid plaintiff monies for the purchase of the Lincoln in question the court concludes that plaintiff and defendant did indeed enter into an oral agreement whereby the 99 Lincoln was to be purchased with plaintiff's money and placed in defendants name for ultimate sale with the

4

profit to be shared 50/50, after reimbursement to plaintiff of the initial investment.

• Plaintiff has clearly established that the vehicle was sold for $2,940 resulting in a profit. Defendant has failed to establish by any credible evidence that he paid money to plaintiff after the sale.

• Plaintiff is entitled to be reimbursed for the initial investment of $2,000 plus half of the sale proceeds for a total of $2,470, computed as follows:

      $2,940- sale price with proceeds received by defendant
      $2,000- minus purchase price
       $940- profit
        ÷2
       $470- profit to each party
      $2000- cost of Lincoln pd. for by plaintiff
      $2470- amount due plaintiff.

• By stipulation of the parties plaintiff will retain possession and ownership of the value city mattress.

By reason of all of the above plaintiff is granted judgement against defendant in the sum of $2,470, plus costs, and statutory interest after date of judgement.

### CVF 0900249

This action was brought by plaintiff seeking damages in the sum of $3,000 from defendant alleging that defendant defaulted on payment of snowplow removal receipts and also for expenses.

As the court understands this cause of action plaintiff and defendant went into the snow plow business and according to plaintiff defendant collected $2,532 for plow jobs and retained all the money. Plaintiff states that she kept track of the jobs by a notebook, marked plaintiff's exhibit Q. It appears that based upon plaintiff's testimony on her exhibits that the plow business ran from January 15, 2007 through February 7, 2008. According to plaintiff the only money turned over to her by defendant was $50. Plaintiff offered into evidences plaintiff's exhibit R, consisting of a full page narrative purportedly signed by defendant. Also offered into evidence were plaintiff's exhibits Q, R, S and Q1.

Upon cross examination plaintiff reiterated her contention that defendant signed his name to the written narrative however there were no witness present.

To all of this defendant responds he did not sign the document referenced by plaintiff and the signature thereon is not his signature. Defendant testified further stating that when money was received he would pay expenses such as gasoline for the truck and when defendant and plaintiff would go out dining and wining he would use snow plow receipts in part to pay for same and also from time to time he gave plaintiff cash money, again with no receipts. Defendant states that he kept no record of any of the plowing transaction or delivery of money to plaintiff.

5

Having reviewed the testimony of the parties and the testimony submitted the court has come to the following findings of fact and conclusions of law:

• Plaintiff and defendant agree that they had an agreement between them for a snow plowing business and plaintiff has documented by exhibit Q1 the record of locations plowed.

• Defendant's statement that he would pay cash to plaintiff from snow plowing receipts that he collected, from time to time while wining and dining or on other occasions is found not to be credible and wholly lacking in any documentation.

• In the opinion of the court plaintiff has established by a preponderance of evidence that the parties did in fact have a mutual agreement and that defendant failed for the most part to share receipts with plaintiff. In arriving at this conclusion the court notes that plaintiff offered into evidence a detailed record of plow jobs performed and defendant has absolutely no record or other documentation of payment to plaintiff.

• The court concludes that plaintiff is entitled to judgement against defendant in the sum of $1,216 computed as follows:

$2,532- gross plow receipts
  ÷2
$1,266- profit to each party
  $50- paid by defendant to plaintiff
$1,216

By reason of all of the above judgement is granted to plaintiff against defendant in this cause of action in the sum of $1,216, plus costs, and statutory interest after date of judgement.

### CVF 0901078

Plaintiff filed this case incorporating three causes of action contending that (1) defendant owes plaintiff $5,000 for the cost of a motorcycle purchased by plaintiff at defendant's request and placed in defendant's name; (2) that plaintiff loaned defendant $2,000 to buy a semi which amount was never repaid; (3) that defendant negligently caused damages to a counter top at the premises of plaintiff costing $3,000 in remedial repairs. Evidence was submitted and testimony was heard.

Plaintiff states that on September 20, 2006 she and defendant went to a Harley Davidson dealer to look at and potentially purchase a motorcycle. According to plaintiff defendant stated he was expecting an injury settlement and he would pay plaintiff back. The transaction took place on September 20, 2006 with plaintiff's exhibit V offered into evidence which is a retail order showing a purchase price of $5,065.50. Also offered into evidence was plaintiff's exhibit C purported to be a document signed by defendant agreeing to pay plaintiff $5,300 which according to plaintiff represented the cost of the motorcycle and $300 for insurance. Plaintiff states that defendant subsequently sold the motorcycle and plaintiff never received payment for the loan.

6

As to the semi, plaintiff testified stating that she issued a check to a Jon Wrecker for the purchase a the vehicle and the vehicle was placed in defendant's name. Defendant agreed to pay plaintiff back for the cost of the vehicle and according to plaintiff defendant refused to do so. Offered into evidence were plaintiff's exhibit X which is a copy of plaintiff's check for $2,000 to a Jon Wrecker referencing an International Semi.

As to the damage at plaintiff's residence, plaintiff stated that defendant negligently put a hot pan on a counter top and resulting in burn marks. According to plaintiff defendant said he would take care of the damage. There were no witnesses to this incident. Offered into evidence were plaintiff's exhibits Y and Z consisting of photographs of the burned area and a quote sheet from Anderson's totaling $3,040 for replacement of the counter top. Accepted into evidence were plaintiff's exhibit AA, C, V, W, X, Y and Z.

To all of this defendant responds denying that he signed any agreement to pay plaintiff back for the motorcycle purchase. He denies that the signature appearing on plaintiff's exhibit C is his signature.

As to the motorcycle, defendant acknowledges that the bike was indeed put in his name and that plaintiff paid for same however he contends that he paid plaintiff $3,000 cash on various occasions over a period of time. He has no receipts or record of any payments. He also stated that he helped re-roof plaintiffs home which was to make up the difference between the $3,000 cash payments and the $5,000 purchase price. Defendant acknowledges that he eventually sold the bike for $2,500.

As to the semi, defendant testified stating that both he and plaintiff paid for the semi with his contribution being cash. He has no receipts or record of any cash payment.

As to the counter top burn damage defendant testified stating that plaintiff contributed to the cause of the damage when she was cooking green beans in a pan and told him to take the pan off the oven and place it on the counter top, which he did.

Upon cross examination defendant acknowledges that plaintiff did put up $5,000 for the purchase of the motorcycle and he has no record of any payback to plaintiff. He admits that the semi was sold for $2,400 to Goody's Auto Parts and he received the proceeds.

Having reviewed the testimony of the parties and the evidence submitted in the three causes of action in this case, the court has come to the following findings of fact and conclusions of law:

- In the opinion of the court plaintiff has established by credible testimony and documentation that she paid for the motorcycle defendant wanted and defendant agreed to reimburse plaintiff for the cost of same. Defendant's testimony contending that he paid plaintiff back through cash disbursements from time to time is found lacking in documentation and credibility. Further, lacking any written agreement or credible evidence establishing an oral agreement as to the roof work supposedly done by defendant to compensate plaintiff for $2,000 of the purchase price of the motorcycle, this defense is found to be without credibility.

- Plaintiff has established by credible testimony and documentation that at defendant's request

7

plaintiff purchased a semi for $2000 which was placed in defendant's name and that defendant was to reimburse plaintiff for the cost of same.

• Plaintiff has failed to establish by a preponderance of evidence that the burn to the counter top was proximately caused by defendant or by defendant's negligence. There were no witnesses and both parties have conflicting versions as to what happened. Plaintiff's cause of action as to the cost of the remedial work for counter top burns is without merit.

By reason of the above judgment on plaintiff's cause of action for the motorcycle transaction is found to be well taken and plaintiff is awarded judgment for $5065.50 computed as follows:

By reason of the above plaintiff is awarded judgement against defendant for the semi loan in the sum of $2,000.

By reason of the above plaintiff's cause of action as to the burn damage to a counter top is found to be without merit.

Plaintiff is accordingly awarded judgement in the sum of $7,065.50 against defendant on the above causes of action, plus costs, and statutory interest after date of judgment.

William G. Kroncke, Judge
Sylvania Municipal Court

Jo Ann Bell, Clerk of Court

Deputy Clerk

Janna Waltz, Esq
405 N. Huron Ste. 200
Toledo, OH 43604

Jeremy Levey, Esq.
500 Madison Ave, Ste. 840
Toledo, OH 43604

Syl. Court 8-13-10.wpd

8